UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DARWIN JOSE C.V.,

      Petitioner,

    v.

TODD LYONS; et al.,

      Respondents.

No. 1:26-cv-02031-TLN-SCR

A # 241-827-547

**ORDER**

This matter is before the Court on Petitioner Darwin Jose C.V.'s[1] ("Petitioner") Motion for Temporary Restraining Order ("TRO").  (ECF No. 13).  The matter is fully briefed.  (ECF Nos. 16, 17, 19, 20.)  For the reasons set forth below, Petitioner's Motion for TRO is DENIED. (ECF No. 13.)

///

///

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States on or about July 13, 2022.  (ECF No. 1 at 4.)  Petitioner was encountered and arrested by U.S. Border Patrol and then released on parole and placed in the Alternatives to Detention program.  (ECF No. 19-2 at 3.)  The Government's documents show that Petitioner was taken into immigration custody again the following year.  (ECF No. 19-1 at 19.)  The record is silent as to the reason for this arrest, though the Notice to Appear issued the same day erroneously states Petitioner had not been previously admitted or paroled.  (*Id.* at 15.)  Petitioner was again released on his own recognizance.  (*Id.* at 20.)  During his time living in the United States, Petitioner was employed as a cook at a restaurant.  (ECF No. 19-2 at 1–2.)  He has no criminal history.  (*Id.* at 2.)

On July 2, 2025, Petitioner was arrested by ICE when he reported as requested to his local Intensive Supervision Appearance Program ("ISAP") office.  (*Id.*)  He was eventually transferred to the Adelanto ICE Processing Center.  (ECF No. 1 at 2.)  On September 30, 2025, an Immigration Judge ("IJ") denied Petitioner release bond upon finding a lack of jurisdiction.  (ECF No. 16-1 at 3–4, 11–12.)  On December 29, 2025, Petitioner received a bond hearing pursuant to *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.).  (ECF No. 16 at 2.)  The IJ denied Petitioner bond upon finding the Department of Homeland Security had "met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate."  (ECF No. 16-1 at 28.)  On January 5, 2026, the Immigration Court scheduled another custody redetermination sua sponte pursuant to *Rodriguez v. Robbins*.[2]  (*Id.* at 30–31.)  Although Respondents provide a copy of the hearing notice with the documents filed before this Court, Petitioner contends he was not notified of the hearing.  (*Id.* at 30; ECF No. 1 at 5.)  Regardless, on January 12, 2026, an IJ denied Petitioner bond without taking evidence or argument, based on the prior flight risk determination.  (ECF No. 1 at 5; ECF No. 16-1 at 32.)  Petitioner was subsequently moved to the California City Corrections Center.  (ECF No. 7-1.)

---

[2]    The Government's documents reference "*Rodriguez v. Robbins*" without a case citation.  (*See* ECF No. 16-1 at 31.)

On February 19, 2026, Petitioner initiated this habeas action challenging his third bond proceeding and related prolonged detention.  (ECF No. 1 at 5–10.)  Petitioner proceeds with counsel.[3]  After the matter was transferred to this district (ECF No. 10), Petitioner filed the instant Motion for TRO (ECF No. 13).  Petitioner seeks immediate release.  (*Id.* at 7.)

## II.    STANDARD OF LAW

Injunctive relief "is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  The purpose of a TRO is to preserve the status quo until a full hearing can be conducted.  *See* Fed. R. Civ. P. 65.

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to issue a preliminary injunction.  *Id.* at 1134–35.

## III.    ANALYSIS

The Court considers each of the *Winter* factors in turn.

### A.    Likelihood of Success on the Merits

Petitioner specifically challenges his third bond proceeding and prolonged detention resulting from being denied bond as violating the Fifth Amendment Due Process Clause.  (ECF

---

[3]    *Cf. Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating that pleadings by pro se litigants must be held to less stringent standards than formal pleadings drafted by lawyers).

No. 1 at 5–10.)  In his Motion for TRO, Petitioner argues he is likely to succeed on the merits because his "habeas claims are substantial and meritorious."  (ECF No. 13 at 5–6.)  In opposition, Respondents argue Petitioner has not exhausted administrative remedies, his private interest is "weak," and he is not entitled to another bond hearing under § 1226(a).  (ECF No. 16 at 3–6.)  The Court begins with exhaustion before turning to due process.

<i>i.      Exhaustion</i>

Respondents assert Petitioner failed to exhaust three administrative remedies: "Petitioner has the right to seek another bond hearing if his circumstances materially change, had the right to appeal the [IJ's] decision to the Board of Immigration Appeals ["BIA"], and has the right to obtain review over legal or constitutional questions."  (ECF No. 16 at 5–6.)  Petitioner argues in response that the harm he challenges is his ongoing confinement, and "[a]dministrative review that cannot prevent continued loss of liberty is inadequate[.]"  (ECF No. 17 at 4.)

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."  *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).  Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus."  *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds).  However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241."  *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'"  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-*

4

*Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).  Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

The Court finds waiving the prudential exhaustion requirement is appropriate here because requiring Petitioner to proceed through any of the three channels identified by Respondents would be futile and inadequate.  Respondents' first identified process – seeking another bond hearing if his circumstances materially change – describes a process that may be available in the future under hypothetical circumstances but that will not remedy the due process violation Petitioner claims already occurred during his third bond proceeding.  The second process – appealing to the BIA – is futile because the appeal period has elapsed and it is unclear whether Petitioner was made aware of the availability or timeline for appeal prior to initiating this habeas action.  The third process – right to obtain review – is inadequate as described since Respondents fail to identify a specific process or body for such review.  Indeed, the instant habeas petition may well be the process Respondents describe for "obtain[ing] review over legal or constitutional questions." (ECF No. 16 at 6.)  Each of the processes Respondents claim Petitioner failed to exhaust are therefore inadequate and futile and demonstrate why waiver of the prudential exhaustion requirement is appropriate.

The *Puga* factors also support waiver.  First, an administrative record is not necessary to resolve the due process questions presented by Petitioner.  Second, waiving the prudential exhaustion requirement will not "encourage the deliberate bypass of the administrative scheme" in future cases, *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017), because, as discussed above, Respondents fail to identify an adequate administrative remedy available to individuals with similar claims to Petitioner.  Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures.  *Id.* (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).  Third, it is

unlikely administrative review will correct its own mistake upon further review as Respondents fail to identify a proper process or agency capable of addressing the constitutional issues raised in the habeas petition.

Accordingly, the Court will not deny Petitioner's Motion for TRO for failure to exhaust administrative remedies. The Court now turns to Petitioner's likelihood of success on his due process claims.

ii.    Fifth Amendment Due Process

In this habeas action, Petitioner specifically challenges his third bond proceeding and prolonged detention following that hearing as violating due process. (ECF No. 1 at 6–10.) With respect to the prolonged detention claim, Petitioner asserts that his detention is unreasonable because "he was denied fundamental procedural protections (no notice, no hearing)[,]" "the IJ failed to conduct an individualized inquiry[,]" and Petitioner "is suffering documented medical deterioration[.]" (*Id.* at 8.) Petitioner does not challenge, and the Court explicitly does not rule on, the lawfulness of his initial arrest and detention or the lawfulness of his continued detention for reasons unrelated to the third bond proceeding.

As set forth above, injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter*, 555 U.S. at 22. Here, the Court finds Petitioner fails his burden to establish a likelihood of success on the merits of his due process claims. Instead of identifying facts or evidence demonstrating why he is likely to succeed on the merits, Petitioner only states that his "habeas claims are substantial and meritorious," and his "detention violates [due process] principles and is therefore unlawful." (ECF No. 13 at 5–6.) Petitioner cites seminal Supreme Court and Ninth Circuit cases on due process but provides no analysis explaining how these cases relate to the specific facts and claims presented in this case. (*Id.*) Elsewhere in his motion, Petitioner cites cases from this District for the proposition that Petitioner is entitled to immediate release. (*Id.* at 3–4.) But the cases cited concerned challenges to the petitioners' initial arrest and detention, not the constitutionality of bond proceedings like the one challenged in Petitioner's case or continued confinement after such proceedings. (*Id.*) As a result of these multiple deficiencies, the Court finds Petitioner has failed

6

to carry his burden to establish a likelihood of success on the merits.

B.   Remaining *Winter* Factors

Likelihood of success is the "most important" *Winter* factor, and "[b]ecause it is a threshold inquiry, when a [petitioner] has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (cleaned up).  Nevertheless, the Court notes that Petitioner fails to carry his burden on the remaining *Winter* elements for the same deficiencies as those above – lack of argument, evidence, or facts.  Additionally, Petitioner fails to explain how immediate release would return Petitioner to the status quo when the challenged conduct here relates specifically to the third bond proceeding.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'") (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

In sum, Petitioner fails to make a showing on each of the *Winter* factors.  Petitioner's Motion for TRO must therefore be denied.

**IV.   CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.   Petitioner's Motion for TRO (ECF No. 13) is DENIED.

2.   Petitioner may file an amended Petition for Writ of Habeas Corpus within **five (5) court days** from the date of this Order.

IT IS SO ORDERED.

Date: May 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE