UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARWIN JOSE C.V., Petitioner, v. TODD LYONS, et al., Respondents. | No. 1:26-cv-02031-TLN-SCR<br>A # 241-827-547<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Darwin Jose C.V.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) The matter is fully briefed. (ECF Nos. 23–27.) For the reasons set forth below, the Petition is GRANTED and the Court orders Petitioner's IMMEDIATE RELEASE.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

This matter is a habeas challenge to Petitioner's civil immigration detention. The Court previously set forth the facts surrounding Petitioner's arrest and detention:[2]

> Petitioner is a noncitizen who entered the United States on or about July 13, 2022. (ECF No. 1 at 4.) Petitioner was encountered and arrested by U.S. Border Patrol and then released on parole and placed in the Alternatives to Detention program. (ECF No. 19-2 at 3.) The Government's documents show that Petitioner was taken into immigration custody again the following year. (ECF No. 19-1 at 19.) The record is silent as to the reason for this arrest, though the Notice to Appear issued the same day erroneously states Petitioner had not been previously admitted or paroled. (*Id.* at 15.) Petitioner was again released on his own recognizance. (*Id.* at 20.) During his time living in the United States, Petitioner was employed as a cook at a restaurant. (ECF No. 19-2 at 1–2.) He has no criminal history. (*Id.* at 2.)
>
> On July 2, 2025, Petitioner was arrested by ICE when he reported as requested to his local Intensive Supervision Appearance Program ("ISAP") office. (*Id.*) He was eventually transferred to the Adelanto ICE Processing Center. (ECF No. 1 at 2.) On September 30, 2025, an Immigration Judge ("IJ") denied Petitioner release bond upon finding a lack of jurisdiction. (ECF No. 16-1 at 3–4, 11–12.) On December 29, 2025, Petitioner received a bond hearing pursuant to *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). (ECF No. 16 at 2.) The IJ denied Petitioner bond upon finding the Department of Homeland Security had "met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate." (ECF No. 16-1 at 28.) On January 5, 2026, the Immigration Court scheduled another custody redetermination sua sponte pursuant to *Rodriguez v. Robbins*.[3] (*Id.* at 30–31.) Although Respondents provide a copy of the hearing notice with the documents filed before this Court, Petitioner contends he was not notified of the hearing. (*Id.* at 30; ECF No. 1 at 5.) Regardless, on January 12, 2026, an IJ denied Petitioner bond without taking evidence or argument, based on the prior flight risk determination. (ECF No. 1 at 5; ECF No. 16-1 at 32.) Petitioner was subsequently moved to the California City Corrections Center. (ECF No. 7-1.)

(ECF No. 21 at 2–3.)

Petitioner initiated the instant habeas action challenging his third bond proceeding and related prolonged detention. (ECF No. 1 at 5–10.) After the matter was transferred to this district

---

[2] Respondents do not dispute the facts. (*See generally* ECF No. 23.)

[3] The Government's documents reference "*Rodriguez v. Robbins*" without a case citation. (*See* ECF No. 16-1 at 31.)

(ECF No. 10), Petitioner filed a motion for temporary restraining order ("TRO") seeking immediate release (ECF No. 13). The Court denied the motion upon finding Petitioner, proceeding with the assistance of counsel, failed to meet his burden to establish a likelihood of success on the merits under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (ECF No. 21 at 5.) As the Court explained, Petitioner's motion failed to set forth facts, evidence, or substantive argument justifying the extraordinary remedy of preliminary injunctive relief. (*Id.* at 5–6.) Due to the motion's multiple deficiencies, the Court was unable to issue a TRO. (*Id.* at 6–7.)

Petitioner has now been detained by U.S. Immigration and Customs Enforcement ("ICE") for over fifteen months. (ECF No. 26 at 2.) On August 3, 2026, an immigration judge ordered Petitioner removed from the United States. (ECF No. 27 at 1.) Petitioner timely appealed to the Board of Immigration Appeals ("BIA") and his appeal remains pending. (*Id.*)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his civil immigration detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 2.) In opposition to the motion for TRO, Respondents argued Petitioner is lawfully detained under 8 U.S.C. § 1226(a) because he was provided a post-

deprivation bond hearing.[4] (ECF No. 16 at 3–5.) In opposition to the Petition, Respondents argue the Court should deny the Petition "for the defects it identified in denying the motion for [TRO]." (ECF No. 23 at 1.)

As an initial matter, Petitioner's failure to obtain a TRO does not preclude success on the merits of the Petition. The four-prong test for obtaining preliminary relief set forth in *Winter*, 555 U.S. at 20, is a different standard than that used to evaluate a petition for writ of habeas corpus. Additionally, Respondents are incorrect that the Court previously noted "*the petition* lacks, 'argument, evidence, or facts,' justifying relief." (ECF No. 23 at 1 (citing ECF No. 21 at 4) (emphasis added).) While Petitioner's motion for a TRO was insufficient to procure preliminary relief, the Court did not go so far as to prejudge the Petition. The Court proceeds with that analysis now.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

///

---

[4] Respondents also argued Petitioner failed to exhaust administrative remedies. (ECF No. 16 at 5–6.) As the Court previously found, prudential exhaustion is not required here. (ECF No. 21 at 4–6.)

A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner into the country on parole and recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. There is nothing on the record to suggest Petitioner violated the terms of his release. Petitioner has no criminal history. (ECF No. 19-2 at 2.) He was detained by ICE when he reported as required to his local ISAP office. (*Id.*) Prior to detention, Petitioner lived and worked in the United States for approximately four years. (*Id.* at 1–2; ECF No. 1 at 4.) The amount of time Petitioner spent living freely in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

B. Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's right to notice and a constitutionally compliant hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty

that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. "The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings[.]" *Hernandez*, 872 F.3d at 990. However, to detain a noncitizen for those reasons, an IJ must examine the nine factors set forth in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Upon review of the record, the IJ's decisions to deny Petitioner release due to flight risk do not pass constitutional muster.

IJ detention determinations are reviewed for "abuse of discretion." *Martinez*, 124 F.4th at 783–84 (9th Cir. 2024). It is an abuse of discretion for an IJ to render a decision that is "arbitrary, irrational, or contrary to law." *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)). A decision with no reasoned explanation for the IJ's findings is an abuse of discretion. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] its reasoning").

Here, the IJ's decisions to deny Petitioner's requests for custody redetermination are conclusory and lack any indication that the IJ meaningfully considered evidence or

testimony.[5] The IJ's first denial was not a custody hearing at all, but instead a denial to hold a hearing based on a finding that the immigration court lacked authority, jurisdiction, and venue for custody redetermination. (ECF No. 16-1 at 3–4, 11.) The entirety of the IJ's second denial order is as follows: "The [immigration court] considered the applicant's request for bond. However, DHS met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate." (*Id.* at 28.) The entirety of the IJ's third denial order is as follows: "[Petitioner] has already been deemed a flight risk. This is his third bond application. [Petitioner] has not demonstrated any change in circumstances." (*Id.* at 32.) Petitioner submits that this third denial occurred without a hearing and without the IJ taking evidence or allowing argument. (ECF No. 1 at 5.) Respondents do not dispute this representation. (*See generally* ECF No. 16 at 2.)

The decisions to deny Petitioner release upon a finding of flight risk are entirely conclusory and contain no analysis of the *In re Guerra* factors or any other reasoned explanation as to how the IJ found Petitioner poses such a fight risk that no alternatives to detention could mitigate that risk. Without any meaningful explanation of the IJ's reasoning, factors considered, evidence weighed, or factual support for the IJ's finding, Petitioner has not been provided adequate due process to ensure the deprivation of his liberty is justified. The Court thus finds the risk that Petitioner has been erroneously deprived of his liberty is high.

As to the final *Mathews* factor, the government's interest in detaining Petitioner without notice or a proper bond hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody hearings are routine processes for Respondents, and any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents set forth no legitimate interest in detaining Petitioner without these processes.

---

[5] While the Petition only challenges Petitioner's third bond proceeding (ECF No. 1 at 5–10), the Court considers all three proceedings here because the third IJ order incorporates the reasoning of the second (ECF No. 16-1 at 32), and Respondents point to all three proceedings in arguing Petitioner has received sufficient process (ECF No. 16 at 4–6).

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a constitutionally compliant hearing before a neutral decisionmaker to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Darwin Jose C.V. (A # 241-827-547) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's request for ruling (ECF No. 25) and request for final decision (ECF No. 26) are DENIED as moot.

4. **The Clerk of Court is directed to serve California City Immigration Processing Center with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Dated: October 16, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE